EDGAR S. HOLBERT et al., Landlords, *v.* EDWARD H. HARRIGAN et al., Tenants.

Municipal Court of the City of Syracuse, October 30, 1946.

*Merwin W. Lay* for landlords.

*Richard T. Mosher* for tenants.

SKERRITT, J. This is a summary proceeding brought by Edgar S. Holbert and Sauchie R. Holbert, landlords, hereinafter

referred to as the owners, against Edward H. Harrigan and Anna Harrigan, tenants, to evict them from the first-floor apartment of a three-family-apartment dwelling located at 429–433 Grant Avenue in the city of Syracuse, which Mr. and Mrs. Holbert have owned for thirty-three years.

Said owners occupy the third floor, a five-room apartment, where they have lived for eighteen years. Their family consists of themselves and Mrs. Holbert's mother, eighty-two years of age, who lives there about six months of each year. The tenants have occupied the first-floor apartment, which is similar to that occupied by the owners, for three years under a month-to-month lease. Their family consists of themselves and one son.

At the opening of the trial the attorneys entered into the following stipulation: " It is hereby stipulated, by and between the attorneys for the parties hereto, that the one and only question to be decided on the trial of this proceeding is the question of law and of fact as to whether or not the petitioners [landlords] were and now are acting under an immediate compelling necessity, within the meaning of Section 6 (a) (6) of the Rent Regulations for Housing, as amended."

In view of this stipulation there is no question as to whether the owners are acting in good faith, and intend to occupy the first-floor apartment as a dwelling; and there is no question as to any Office of Price Administration certificate, or the giving or filing of due and proper notice. The only question to be decided is whether the facts show an " immediate compelling necessity ".

It appears that there are three flights of stairs from the ground to the third-floor apartment, forty steps in all: ten steps from the ground to the first floor, fifteen from the first floor to the second, and fifteen from the second floor to the third. Mr. Holbert, sixty-four years of age, but in good health and regularly employed as a toolmaker, finds the stairs tiresome, especially during the eight months of the year when he has to take care of his furnace. For Mrs. Holbert, sixty-one years of age, the stairs are more difficult because she has arthritis, progressive but not crippling, in her limbs and back; and when her husband is not at home she has to go down cellar for food and to care for the furnace. Her physician testified that her physical condition makes it necessary for her to live on the first floor. It also appears that her aged mother, who lives there about half the time, finds the stairs so difficult that she may decide not to live there in the future. The tenants, about sixty years

of age, have made many diligent efforts to find another apartment, even at higher rent, and have been unsuccessful because of the severe housing shortage in this city.

This paragraph (6) of subdivision (a) of section 6 of the Rent Regulation for Housing (10 Federal Register 11667), which section as amended became effective September 15, 1945, read in connection with other sections of the regulation, permits eviction on a thirty-day notice in writing where the landlord, having acquired an enforcible right to possession prior to the effective date of the regulation, has an "immediate compelling necessity" to recover possession for his own use as a dwelling. Thus it is apparent that this section, permitting eviction on short notice, is intended to provide emergency relief for a landlord whose distress amounts to a necessity which is both immediate and compelling. If he is not under such pressure he cannot evict on this short notice, but must give a longer notice and pursue other remedies, one of which is provided in paragraph (1) of subdivision (b) of section 6 of said Regulation (10 Federal Register 11667).

As to Mr. Holbert himself, who is in reasonably good health and regularly employed, is he acting under the pressure of "necessity", or merely under an inconvenience, perhaps a serious inconvenience? The principal question of course arises in regard to Mrs. Holbert, whose physical condition now makes the stairs burdensome, perhaps painful at times. Does this amount to a "necessity"? If so, is it an "immediate compelling necessity"?

The word "necessity" of course does not have a fixed character, but has varying degrees of meaning which the courts have recognized, such as a necessity which is unavoidable, and a necessity which is merely a matter of convenience. (*Boland* v. *Beebe*, 186 Misc. 616.) In the instant case is the alleged necessity unavoidable, or is it a matter of convenience? And if unavoidable, is it also immediate and compelling?

In view of the drastic housing shortage throughout the country when this "immediate compelling necessity" amendment was adopted, September 15, 1945, and the general purposes of the rent regulation, and the striking words — "immediate and compelling ",— I think this is the language of imperative emergency. (*Hammond* v. *Marcely*, 58 N. Y. S. 2d 565.) It is the spirit and purpose of this rent regulation that every reasonable protection shall be thrown around tenants during this critical housing shortage. (*Siegel* v. *Bowers*, 185 Misc. 684.)

It may be noted that the Price Administrator, who is charged with the administration of the Emergency Price Control Act, has interpreted " immediate compelling necessity " as follows: " The criteria to determine whether an immediate compelling necessity exists should be strictly applied. * * * L lives in an upper apartment of a two flat which he owns. He files proceedings under Section 6 (a) (6) to dispossess his tenant in the lower flat and produces a doctor's certificate that because of rheumatism it is inconvenient for him to climb the stairs to the upper apartment. L's rheumatism is of long standing and no immediate danger to his health is involved in climbing the stairs. L has no immediate compelling necessity and must petition under Section 6 (b) (1) ". (C. C. H., War Law Service, 4 Price Control Cases, pp. 49, 381, interpretation issued Jan. 21, 1946.) While such administrative interpretations are not binding on the courts, they should be carefully considered, and are entitled to great weight. (*Lightbody* v. *Russell,* 293 N. Y. 492, 496; *Mendoza* v. *Syme,* 184 Misc. 98, 102.)

In *Boland* v. *Beebe* (*supra*) this court held that the words " immediate compelling necessity ", as used in paragraph (6) of subdivision (a) of section 6, import great urgency and emergency; that they must be construed in the light of the nationwide housing crisis which has given rise to these Federal restrictions; and that, in applying these regulations, the court must take judicial notice of the critical housing emergency in the city of Syracuse, and must exercise discretion commensurate therewith.

As to the argument that this rent regulation is unconstitutional, the United States Supreme Court has held that the war powers of Congress under the Constitution amply sustain this control of rents and housing, expressed in the Emergency Price Control Act of 1942, as amended. (*Bowles* v. *Willingham,* 321 U. S. 503.)

Judgment for the tenants. The petition is dismissed, with costs.