■ NAT TEPPER, Respondent, v SAMUEL TANNENBAUM et al., Appellants. — Order of the Supreme Court, New York County (Leonard N. Cohen, J.), entered April 3, 1981, which, *sua sponte,* held a stipulation entered into between the parties to be not binding upon the court, reversed, without costs, on the law, the facts and in the exercise of discretion, and the matter remanded to Cohen, J., for further proceedings in accordance with the stipulation. This action to recover a share of the profits resulting from certain building mainte- nance contracts was first tried in 1976 and resulted in a judgment in favor of defendants *(Tepper v Tannenbaum,* 87 Misc 2d 829). We reversed (65 AD2d 359) and remanded for a new trial, holding that the trial court, in excluding from evidence a tape recording and the transcript thereof, as well as testimony establishing the authenticity of the recording and the identification of the voices, had given the "dead man's statute" (CPLR 4519) too limited an interpretation. On April 25, 1980 the parties stipulated to retry the case on the record and the exhibits introduced at the prior trial including "the tape recording and transcript thereof which was the subject of the decision and opinion of the Appellate Division". The stipulation further provided that "[i]n the event that the Court, upon retrial, finds the evidence legally insufficient on the issues of authenticity, and the identity of the speakers on the tape recording, plaintiff shall be entitled to have a trial on this limited issue prior to the decision of this matter". On April 28, 1980 the Trial Justice to whom the matter was assigned "so ordered" the stipulation and the matter was submit- ted to him. After holding the matter for approximately 11 months, the Trial Justice notified the parties that in the absence of "live testimony" he was unable to determine the issues of fact presented. Accordingly, he vacated the stipulation and, on April 3, 1981, almost a year after the matter had been submitted to him, entered an order determining that the stipulation was not binding upon him and remanded the matter to the Conference and Calendar Part "for a complete new trial". "Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. * * * and all such stipulations not unreasonable, not against good morals or sound public policy, have been and will be enforced" *(Matter of New York, Lackawanna & Western R.R. Co.,* 98 NY 447, 453; see, also, *Morse v Morse Dry Dock & Repair Co.,* 249 App Div 764; 2A Weinstein-Korn-Miller, NY Civ Prac, par 2104.02). The stipulation in this case is not an unreasonable one. Nothing contained therein contravenes good morals or sound public policy. The trial court "so ordered" the stipulation, thereby indicating his willingness to be bound thereby. It held the action for almost a year. In the interim the list of witnesses was diminished by death, making necessary the reading of their testimony, at least, at any subsequent "live trial". In these circumstances we are of the opinion that it was an abuse of discretion to set the stipulation aside. Concur — Birns, J.P., Ross, Markewich and Bloom, JJ.

Sandler, J., dissents in a memorandum as follows: I agree with the majority of the court that under the circumstances presented the stipulation entered into by the parties was a reasonable one. That appears to have been the initial judgment of the Trial Judge who "So Ordered" the stipulation. Although the record appears to be incomplete, it seems a reasonable inference that after a study of the original trial transcript, the trial court concluded that he could not in good conscience render an appropriate decision without hearing the princi- pal witnesses. There is no reason to doubt the sincerity or reasonableness of a conclusion that apparently followed a study of the trial record of a kind that

none of us have had reason to undertake. The Trial Judge's conclusion presents a problem for which there is no entirely satisfactory solution. I find the least acceptable approach to be that adopted by a majority of the court, in effect commanding the Trial Judge to render a verdict which he has stated he cannot appropriately render. There is a readily available alternative approach which is preferable. The stipulation appearing to be reasonable, the trial court has an obligation to undertake to carry it out. Instead of invalidating the stipulation as the trial court did, or directing the Judge to do that which in good conscience he concluded he cannot do, as the majority proposes, it would make more sense to modify the order to the extent of directing that the conference Judge assign the case to another Judge to try in accordance with the stipulation. Hopefully another Judge will find it possible to so decide the case. If it should turn out that a second Judge comes to the same conclusion as is reflected in the order appealed from, the court would have to reconsider the conclusion that the stipulation is indeed reasonable and practicable. Although not essential to the immediate issue, it should be noted that the quotation in the majority opinion from *Matter of New York, Lackawanna & Western R.R. Co.* (98 NY 447, 453) states only part of the rule applicable to stipulations. The rest of the rule was set forth in a still older authority *(Van Nuys v Titsworth,* 57 Hun 5, cited with approval by the Court of Appeals in *Matter of Frutiger,* 29 NY2d 143, 150: "'"It is sufficient if it appears that either party has inadvertently, unadvisably or improvidently entered into an agreement which will take the case out of the due and ordinary course of proceeding in the action, and in so doing may work to his prejudice."'").